918 So.2d 141 (2005)
Lorenzo SMITH
v.
STATE of Alabama.
CR-03-2146.
Court of Criminal Appeals of Alabama.
February 25, 2005.
Rehearing Denied April 22, 2005.
Certiorari Denied July 8, 2005.
*142 Lorenzo Smith, pro se.
Troy King, atty. gen., and Hense R. Ellis II, asst. atty. gen., for appellee.
Certiorari Denied (as to the State) July 8, 2005.
Alabama Supreme Court 1041147.
SHAW, Judge.
Lorenzo Smith appeals the circuit court's summary denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked the 23-year sentence imposed for his 1992 guilty-plea conviction for murder. Smith did not appeal his conviction and sentence.
Smith filed his petition on June 27, 2004. In his petition, Smith alleged that his sentence should be vacated and he should be resentenced because, he said, he was not provided with a copy of the presentence report before he was sentenced, as required by Rule 26.3(c), Ala.R.Crim.P. After receiving a response from the State, the circuit court summarily denied the petition on September 7, 2004.

I.
Smith's petition was not properly verified as required by Rule 32.6(a), Ala. R.Crim.P. Therefore, we must determine whether the circuit court had jurisdiction to rule on Smith's petition in light of Kelley v. State, 911 So.2d 1125 (Ala.Crim.App. 2004); Coleman v. State, 911 So.2d 1099 (Ala.Crim.App.2004); and Thornton v. State, 859 So.2d 458 (Ala.Crim.App.2003).
In Thornton, Thomas Thornton, exercising a duly appointed power of attorney, verified and filed separate Rule 32 petitions in the Jefferson Circuit Court on behalf of his brothers Michael Thornton and Kenneth Thornton. The circuit court summarily denied the petitions. Although the State did not raise the lack of proper verification as an issue on appeal, this Court took notice that the Thorntons' petitions were not properly verified and held that Rule 32 contemplates the verification of a petition only by (1) the petitioner or (2) the petitioner's legal counsel, i.e., someone duly licensed and authorized to engage in the practice of providing legal representation in the State of Alabama. For the reasons stated in this Court's opinion in Thornton, we adhere to that specific holding.
After concluding in Thornton that the petition had not been properly verified, we dismissed the appeals, stating "that the petitions were not properly verified and, thus, that the circuit court did not have jurisdiction to rule on the petitions." 859 So.2d at 459. We then stated that "[t]he circuit court should allow Michael Thornton and Kenneth Thornton a reasonable time, not less than 60 days, to file properly verified petitions and the date of those petitions should relate back to the date of the original petitions." 859 So.2d at 460.
*143 In Coleman, Joe Coleman appealed from the circuit court's summary denial of his Rule 32 petition. Again, although the State did not raise the lack of proper verification as an issue on appeal, without considering the grounds relied on by the circuit court in denying the petition we took notice that Coleman's petition was not properly verified and held that the circuit court had no jurisdiction to rule on the unverified petition. We then dismissed the appeal, stating that "[t]he circuit court should allow Coleman a reasonable time, not less than 60 days, to file a properly verified petition and the date of that petition should relate back to the date of the original petition." 911 So.2d at 1100.
In Kelley, Daniel Kelley appealed the denial, on the merits, of his Rule 32 petition. Without addressing the merits of the petition, we took notice that Kelley's petition was not properly verified; we held that because Kelley had not signed his petition in the presence of a notary public, the petition was not properly verified. For the reasons stated in this Court's opinion in Kelley, we adhere to that specific holding.
After concluding in Kelley that the petition had not been properly verified, we dismissed the appeal, holding that the circuit court had no jurisdiction to consider the merits of the Rule 32 petition and stating:
"Accordingly, the circuit court is directed to return the petition to Kelley so that he may have an opportunity to file the petition in the proper form. The filing date for Kelley's amended petition shall relate back to the date the original petition was filed in the circuit court. If the ruling on the properly filed Rule 32 petition is adverse to Kelley then Kelley should file a new notice of appeal within 42 days of the date of the ruling on the amended petition."
911 So.2d at 1128.
Thornton Coleman, and Kelley are similar in several respects. First, because this Court was of the opinion that the lack of proper verification of a Rule 32 petition deprived the circuit court of subject-matter jurisdiction to entertain the petition, we took notice and addressed the verification issue in all three cases, even though the issue had not been raised. See Lanier v. State, 733 So.2d 931 (Ala.Crim.App.1998) (noting that this Court can address an issue involving subject-matter jurisdiction at any time, even if the issue is not raised on appeal). Second, and for the same reason, we dismissed all three appeals. Third, although we held that each petition was a nullity as far as establishing subject-matter jurisdiction, we nonetheless held that the petition was sufficient to toll the limitations period in Rule 32.2(c), and we allowed each petitioner the opportunity to file another petition, with the filing date for the new petition to relate back to the date the original petition was filed in the circuit court.[1]
Thornton was the first case in which this Court held that the lack of proper verification, as required by Rule 32.6(a), constituted a jurisdictional defect that deprived the circuit court of authority to act on a Rule 32 petition. We adhered to that holding in Coleman and again in Kelley. However, we are now concerned that our holding in Thornton may have been unnecessarily broad; that our interpretation of the verification requirement in Rule 32.6(a) as being a prerequisite to subject-matter jurisdiction *144 will inevitably lead to unnecessary expense and delay and consequently place an additional burden on an already over-burdened court system; and that our interpretation may be inconsistent with the Alabama Supreme Court's intent in adopting the verification requirement in Rule 32.6(a). Thus, we take the opportunity presented by this case to reexamine our holdings in Kelley, Coleman, and Thornton.[2] In so doing, the issue we focus on is whether lack of proper verification of a Rule 32 petition is a jurisdictional defect, necessitating the dismissal of an appeal from a ruling on a jurisdictionally defective petition, or whether lack of proper verification constitutes only a defect in the form of the petition that is subject to waiver.
Rule 32.6(a), which deals with the form, filing, and service of a Rule 32 petition, provides, in pertinent part:
"A proceeding under this rule is commenced by filing a petition, verified by the petitioner or the petitioner's attorney, with the clerk of the court.... The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form....
"Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition...."
It is well established that words used in procedural rules adopted by the Alabama Supreme Court must be given their plain meaning. See Ingram v. State, 882 So.2d 374 (Ala.Crim.App.2003). In analyzing the language of Rule 32.6(a), the problem is not that there is no rational way to understand the words as they are written; the problem is that there is more than one rational way to understand those words, i.e., there is no single "plain meaning." See, e.g., Ex parte National Western Life Ins. Co., 899 So.2d 218, 223 (Ala.2004) (noting that "`only if there is no rational way to interpret the words [of the statute] as stated will we look beyond those words to determine legislative intent'").
The Alabama Rules of Criminal Procedure were promulgated by the Alabama Supreme Court pursuant to its rule-making power. In construing one of those rules, in a situation where the wording of the rule is not clear, this Court must attempt to ascertain and effectuate the intent of the Alabama Supreme Court as set out in the rule. This intent may be gleaned from the language used, the reason and necessity for the rule, and the purpose of the rule. See Dutell v. State, 596 So.2d 624 (Ala.Crim.App.1991).
In Thornton, we interpreted the first sentence of Rule 32.6(a)  that "[a] proceeding... is commenced by filing a petition, verified by the petitioner or the petitioner's attorney, with the clerk of the [circuit] court"  as making proper verification an indispensable part of a petition. The rationale of Thornton, although not clearly stated in the opinion, was that an unverified petition has no operative effect when filed and, therefore, that it cannot invoke the circuit court's subject-matter jurisdiction. This Court treated the first sentence in Rule 32.6(a) the same as the second paragraph of Rule 32.6(a) has consistently been treated. The second paragraph of Rule 32.6(a), provides, in part, that "[u]pon receipt of the petition and the *145 filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition ...." In Ex parte Carter, 807 So.2d 534 (Ala.2001), the Alabama Supreme Court, citing the language in the second paragraph of Rule 32.6(a), held that the failure to collect the filing fee or to approve an affidavit of substantial hardship deprived the circuit court of subject-matter jurisdiction. The Court held, in effect, that the petition could not be considered filed until the necessary filing fee had been paid or the petitioner had been declared indigent. Based on Ex parte Carter and related cases from both this Court and the Alabama Supreme Court discussing the jurisdictional implications of not collecting a filing fee or approving an affidavit of substantial hardship, see Ex parte McWilliams, 812 So.2d 318 (Ala.2001); Ex parte St. John, 805 So.2d 684 (Ala.2001); and Goldsmith v. State, 709 So.2d 1352 (Ala. Crim.App.1997), this Court in Thornton concluded that the Supreme Court intended the verification requirement to be a jurisdictional prerequisite, in the same way as the payment of the filing fee or the alternative granting of in forma pauperis status.
However, further research indicates that there is considerable authority calling into question the correctness of our conclusion that an unverified Rule 32 petition has no operative effect when filed, and, in hindsight, we think that that conclusion, although certainly plausible, is not necessarily dictated by the language of Rule 32.6(a). Another equally plausible interpretation of the first sentence in Rule 32.6(a) is that the Supreme Court understood the verification requirement to be significant for purposes of securing good faith in the averments of the petition and providing the legal underpinning for a perjury prosecution, but did not intend for the requirement to have jurisdictional implications. In this respect, we note that the second sentence in Rule 32.6(a) specifically contemplates that defects in the form of the petition are not grounds for dismissal of the petition but are readily curable by amendment, and both the Supreme Court and this Court have held that defects in the form of a Rule 32 petition in no way implicate the jurisdiction of the circuit court. See, e.g., Young v. State, 667 So.2d 141 (Ala.1995); Norwood v. State, 770 So.2d 1113 (Ala.Crim.App.2000); and Davis v. State, 784 So.2d 1082 (Ala.Crim. App.2000). Furthermore, in Garrett v. State, 644 So.2d 977 (Ala.Crim.App.1994), this Court held that the timely filing of a Rule 32 petition that is not in the proper form nonetheless tolls the limitations period of Rule 32.2(c), and that an "amended petition," i.e., one that adheres to the form requirements of Rule 32, relates back to the date of the filing of the original petition, provided the amended petition is filed within a reasonable time following the order of the court returning the original petition. Under the Garrett line of cases, the filing of the original petition, although defective in form, operates to invoke the subject-matter jurisdiction of the circuit court.
In order to determine whether the Supreme Court intended the lack of proper verification to be a defect in form, as opposed to jurisdiction, we must look more closely at the nature and purpose of Rule 32 and, in doing so, we must bear in mind Rule 1.2, Ala.R.Crim.P., applicable to Rule 32,[3] which cautions that the Rules of Criminal Procedure must "be construed to secure *146 simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving the public welfare."
It is generally understood that Rule 32 was intended to provide a simplified procedure for obtaining postconviction review and that the rule was designed to provide a procedure for securing the benefits of either habeas corpus or coram nobis review, if proper grounds as set out in the rule are shown. Rule 32 did not abolish the substantive right to postconviction review under the statutory remedy of habeas corpus; it merely changed the procedure for seeking habeas corpus relief in most situations, which had been previously governed by the procedures set out in §§ 15-21-1 through -34. See Drayton v. State, 600 So.2d 1088 (Ala.Crim.App.1992), overruled on other grounds, Maddox v. State, 662 So.2d 915 (Ala.1995); Rule 32.4. Thus, the law on habeas corpus petitions is instructive.
Although § 15-21-4, Ala.Code 1975, provides that a petition for a writ of habeas corpus "must be verified by the oath of the applicant to the effect that the statements therein contained are true to the best of his knowledge, information and belief," this mandatory verification requirement has not been interpreted to be a jurisdictional prerequisite. Instead, it is well established in Alabama that the failure to verify a habeas corpus petition constitutes a pleading defect that warrants dismissal of the petition for failure to state a proper claim for relief. See the cases collected at 29 Ala. Digest 2d Habeas Corpus § 673 (2002). This Court has held that niceties of pleading are not favored in statutory habeas proceedings; however, under our caselaw, the failure to verify a habeas corpus petition is not considered a mere nicety of pleading that should be disregarded. Instead, a habeas corpus petition that is not properly verified is subject to be dismissed, without prejudice to refile, and that dismissal is subject to affirmance on appeal. In short, an unverified petition for a writ of habeas corpus, although considered to be insufficiently pleaded, is not treated as jurisdictionally defective. Similarly, it also appears from our research that an unverified petition for the common law writ of error coram nobis was not treated as jurisdictionally defective. See, e.g., Gwin v. State, 456 So.2d 845 (Ala. Crim.App.1984) (noting that the petition was not verified but nonetheless affirming the circuit court's denial of the petition). In light of the Supreme Court's admonition in Rule 1.2 to construe Rule 32 "to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving the public welfare," we find it most unlikely that in adopting Rule 32 the Supreme Court intended to deviate from existing caselaw governing the verification of petitions seeking habeas corpus or coram nobis review. If it had intended to make such a significant change in established precedent by treating verification of a Rule 32 petition as a jurisdictional prerequisite, we believe that the Court would certainly have made its intent much clearer in the rule.
It is also generally understood that a postconviction proceeding filed pursuant to Rule 32, although touching on criminal matters and governed by the Alabama Rules of Criminal Procedure, is basically civil in nature, with the burden resting on the petitioner to properly plead and prove by a preponderance of the evidence that he or she is entitled to relief under one of the stated grounds in Rule 32.1. See Rule 32.3 and 32.6(b); Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002); and State v. Hutcherson, 847 So.2d 378 (Ala.Crim. *147 App.2001), rev'd on other grounds, 847 So.2d 386 (Ala.2002). The Rules of Criminal Procedure do not address whether the Rule 32.6(a) verification requirement is jurisdictional in nature; therefore, those rules have no field of operation here even though Rule 32.4 states that they generally apply. Turning, then, to our civil rules, we note that Rule 11, Ala.R.Civ.P., states that "[e]xcept when otherwise specifically provided by rule or statute, pleadings, motions, or other papers need not be verified or accompanied by affidavit." Rule 32.6(a) specifically provides that a Rule 32 petition must be verified. It appears to be the general rule, however, that, even when verification of a civil pleading is required by law, in the absence of a clear indication to the contrary, it is not treated as an indispensable part of the pleading so that the lack of verification must be deemed to vitiate a court's subject-matter jurisdiction.[4] In 61B Am.Jur.2d Pleading § 888 (1999), we find the following:
"Verification is the confirmation of the correctness, truth, or authenticity of the pleadings. A verification attests to the truthfulness of the allegations contained in a pleading.
"With the object of securing good faith in the averments of a party, modern codes under the reformed system of procedure contain provisions requiring the verification of pleadings. The verification, however, constitutes no part of a pleading, unless it is otherwise contemplated by statute. Verification of a pleading is not a jurisdictional requirement, and want of verification is not a jurisdictional defect."
(Footnotes omitted.) In 61B Am.Jur.2d Pleading § 897, it is stated:
"While pleadings are ordinarily signed and verified before filing, the failure to verify a pleading to which an oath is required is generally a defect that can be remedied by amendment. Thus a failure properly to verify a pleading may ordinarily be remedied thereafter. Statutes permitting amendments have been held to be sufficiently broad to permit a pleading, defectively verified, to be verified in open court at the trial. An amended verification of a petition relates back to the date of the petition where the original verification was at most voidable.
"On the other hand, where a proper verification is jurisdictional and service is constructively made by publication and the defendant does not appear, it has been held that a totally insufficient verification, by one other than the person authorized by statute, may not be remedied after the publication of notice. Similarly, a court may refuse to exercise jurisdiction over a matter under the Federal Rules, when a petition or application is filed without a required verification."
(Footnotes omitted.) And in 61B Am. Jur.2d Pleading the following appears:
"A defective or imperfect verification may be waived. Like any other formal matter, an absence of, or defect in, verification, is waived by failure to make a proper and timely objection sufficiently specific to inform the pleader of the absence or defect, or it may be expressly waived by agreement between the parties. Thus, want of verification or defective verification may be waived by demurring where the proper method of objecting is by motion to strike, by pleading responsively to an adversary's *148 pleading, by failing to raise the objection until the case is called for trial, or until the parties have gone to trial on the issues of fact formed by the pleadings, or until after verdict or judgment. Of course, the objection comes too late when made for the first time on appeal.
"The rule as to waiver is ordinarily likewise applied in respect of the benefit of a statute or rule by which an allegation of the execution or of the consideration of a written instrument must be taken as true unless met by a verified denial. This waiver may be express or implied by failure to object to the unverified plea during the trial of the case. Introduction of evidence to support a written instrument which has met with an unverified denial has been held to indicate a waiver of the verification required by statute or rule.
"Where the absence of a proper verification affects the jurisdiction of the court to render any judgment in the cause, a vital defect in the verification is one which, it has been held, will not be waived by failure to object. Thus, it has been held that a default judgment may be collaterally attacked where there was no verification by the only party authorized to execute the necessary affidavit, under a statute which contemplates that the verification is jurisdictional."
(Footnotes omitted.)
This same general discussion of the verification requirement with respect to pleadings also appears in 71 C.J.S. Pleading §§ 486 and 488 (2000) as follows:
"A verification of a pleading means that it contains a confirmation as to the truthfulness or authenticity of its contents. Thus, it is a statement, under oath, that the pleading is true. It includes both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by a notary or other officer authorized by law to administer oaths. The verification is designed to secure the good faith in the averments of a party.
"Under the Federal Rules of Civil Procedure, pleadings need not be verified or accompanied by affidavit, except when otherwise specifically provided by rule or statute. Similarly, the pleadings in civil actions need not, in general, be verified, where no verification is required under a state statute or rule of court. However, a number of statutes or rules have made it necessary to verify certain pleadings, or pleadings setting up certain causes of action or defenses; and, under some statutes, all pleadings must be verified.
"Verification ordinarily is not necessary to vest jurisdiction in the court; unless it is required by statute. The absence of verification does not deprive the court of jurisdiction to act, unless a supporting affidavit is clearly made an indispensable part of the pleading.
"If it is necessary for a plaintiff to verify a demand of a certain character, it is generally necessary for the defendant to verify a similar demand when set up by way of counterclaim or set-off."
"Where verification is required, an unverified pleading may, in some jurisdictions, be treated as a nullity. The failure to comply with the requirement to verify a petition renders it incomplete and inoperative. A complaint fails to state a legally cognizable claim absent a submission of an affidavit from a person having knowledge of the facts.
"A pleading which, under the law, should be verified, cannot, according to some authorities, be considered filed until it is verified, or, if it is filed, it cannot be taken as a complete pleading until it *149 is verified or the verification is waived by the adverse party.
"There is authority that unverified pleadings have no effect in presenting issues to the court for consideration at the trial, and an unverified pleading cannot be disregarded without an opportunity being given to the pleader to supply a verification. According to the authorities following the latter rule, the absence of a verification is a mere defect or irregularity in pleading which is not jurisdictional and does not of itself justify a court in refusing to allow the pleading to be filed or in denying a right of recovery or a defense."
(Footnotes omitted.)
The following discussion by the Kansas Supreme Court in In re Estate of Shaffer, 203 Kan. 264, 266-70, 454 P.2d 1, 3-6 (1969), is illustrative of the general rule:
"This court has held that the failure to verify a pleading which, by statute, is required to be verified does not constitute a jurisdictional defect. In Patterson v. Patterson, 164 Kan. 501, 190 P.2d 887 [(1948)], the plaintiff filed a motion to vacate as void, a judgment of divorce granted her husband on his unverified cross-petition some thirteen years before. This court held the judgment was not void even though the cross-petition was required by statute to be verified. In deciding that the trial court had erred in vacating the judgment, the court declared:
"`... it has been repeatedly held that an imperfect verification, or a lack of verification, does not oust the court of jurisdiction ....' (p. 504, 190 P.2d p. 889.)
"In Pulliam v. Pulliam, 163 Kan. 497, 183 P.2d 220, 1 A.L.R.2d 418 [(1947)] it was held that an improper verification of a petition for divorce was voidable at best and was subject to amendment which would relate back to the date of the original petition.
"While both the Patterson and Pulliam cases were governed by the code of civil procedure rather than by the probate code, the legal principles involved in applying the provisions of the two codes are not in conflict, nor is any distinction to be drawn between the rules of law relating to matters of jurisdiction, regardless of which code is being considered. The same legal philosophy with respect to statutory construction and interpretation is germane to both codes.
"A later case concerning the same subject matter, In re Wilkison, 192 Kan. 285, 387 P.2d 152 [(1963)], involved a claim filed against a decedent's estate. In this case, a verified claim was filed in probate court within the nine months permitted by the nonclaim statute. After the time for filing had expired, an amended unverified petition was filed. The case was subsequently transferred to district court, where the first amended pleading was found to be defective for want of verification, and the district court permitted a second amended petition to be filed  which was verified.
"The administratrix of the estate contended that the original petition, being superseded by the first amended petition, had been eliminated for all practical purposes, and that the first amended pleading, being unverified, was not subject to further amendment. Therefore, it was argued, the claimant had no petition whatever on file within the time permitted by statute. In rejecting that argument this court said:
"`G.S.1949, 59-2201, provides that every application in a probate proceeding shall be by petition signed and verified by or on behalf of the petitioner, and that no defect in form *150 shall impair substantial rights. When this matter was transferred to the district court that tribunal was authorized to require pleadings to be filed or amended (G.S.1949, 59-2408) as though it had had original jurisdiction of the matter. Under the broad power given by G.S.1949, 60-759, the court was authorized to permit the amendment of the first amended petition by verification. Examination of the original petition which was filed within the statutory time for filing claims establishes that it fully apprised the administratrix of the facts and nature of the claim against the estate. The two amended petitions were merely an enlargement and amplification of the original petition, and all were based upon the same claim for relief....' (Emphasis supplied.) (pp. 286, 287, 387 P.2d p. 153.)
"The rationale which undergirds the foregoing decisions is in complete harmony with the modern view followed in many, if not most, jurisdictions. In 1A Barron and Holtzoff, Federal Practice and Procedure, § 333, pp. 270, 271, the authors say:
"`... The trend of enlightened opinion is away from "the all too barren formality of an oath to pleadings"...' (quoting, Clark, Simplified Pleadings, 1942, 2 F.R.D. 456, 463.)
"`....
"`Even if the statute requires verification, the filing of an unverified complaint will commence the action so as to toll the statute of limitations. Despite the requirement of verification, the law is definite and well settled that any objections to lack of verification must be raised immediately or not at all. Imperfect verification of a pleading is not a jurisdictional defect and is amendable under Rule 15.'
"A federal case, In re Royal Circle of Friends Bldg. Corporation, 159 F.2d 539 [(7th Cir.1947)], is cited by Barron and Holtzoff in support of the foregoing text. In that case, the United States Circuit Court of Appeals, for the 7th Circuit, stated:
"`We conclude that the requirement of verification is not jurisdictional in the strict sense ....' (p. 541.)
"The general rule appears well stated in 41 Am.Jur., Pleading, § 279, p. 483, in this language:
"`With the object of securing good faith in the averments of a party, modern codes under the reformed system of procedure contain provisions requiring the verification of pleadings. The verification, however, constitutes no part of a pleading, unless it is otherwise contemplated by statute, and is not ordinarily necessary to vest jurisdiction in the courts.'
"Cases from numerous jurisdictions announce adherence to this rule. In Board of Education of San Francisco Unified School District v. Mulcahy, 50 Cal.App.2d 418, 123 P.2d 114 [(1942)], the California court spoke in these words:
"`... While it is true that in certain actions, such as to quiet title, and practically all special proceedings, the law requires the complaint or petition to be verified, it is the established rule that failure to do so constitutes only a defect in pleading not affecting the jurisdiction of the court ....' (p. 423, 123 P.2d p. 118.)
"In adjudicating the same issue in Dean et al. v. First Nat'l Bank et al., 217 Or. 340, 341 P.2d 512 [(1959)], the Oregon Supreme Court said:

*151 "`We have before said that a verification is merely a formal matter and described a want of a proper verification as a mere irregularity ....' (p. 349, 341 P.2d p. 516.)
"A recent case from New Jersey, Preparatory Temple, etc. v. Seery, 81 N.J.Super. 429, 195 A.2d 900 [(1963)], involved an in rem tax foreclosure action in which a judgment of foreclosure had been entered against the property owner despite the fact that the complaint had not been verified. In holding the requirement of verification was directional only, the court declared:
"`... It is a purely procedural direction which is formal but does not go to the essence of the law with regard to requirements for jurisdiction of the courts. The plaintiff has received no lesser day in court, and has not shown to the satisfaction of the court that he has been in any way prejudiced or harmed by the omission....' (pp. 433, 434, 195 A.2d p. 903.)
"(See, also, People ex rel. N.Y. City Omnibus Corp. v. Miller, 282 N.Y. 5, 24 N.E.2d 722 [(1939)]; Jacobs et al. v. Allister, 122 N.Y.S.2d 826 [(1953)]; Crist v. Tallman, 190 Iowa 1248, 179 N.W. 522 [(1920)]; Wise v. Outtrim, 139 Iowa 192, 117 N.W. 264, 130 Am.St. Rep. 301 [(1908)]; Gregerson v. Collins, 80 Nev. 452, 396 P.2d 27 [(1964)]; 71 C.J.S. Pleading § 345, pp. 744, 745.)
"It must be conceded that this court, under early decisions, has held that an unverified petition filed pursuant to K.S.A. 59-2201 is subject to a motion to strike. (Warner v. Warner, 11 Kan. 121 [(1873)]; Clawson v. McCune's Adm'r, 20 Kan. 337 [(1878)].) However, we have never held nor do we now view an unverified petition to be a nullity, defying amendment. The prevailing rule in this respect is set forth in 41 Am.Jur., Pleading, § 286, p. 487:
"`Pleadings are ordinarily signed and verified prior to their filing. But a failure properly to verify a pleading may ordinarily be remedied thereafter. Thus, statutes permitting amendments have been held to be sufficiently broad to permit a pleading, defectively verified, to be verified in open court at the trial....'
"This principle was recognized in Kimel, Executor, v. Briggs, 183 Kan. 315, 328 P.2d 746 [(1958)], where the district court had granted the defendant leave to verify his answer and had overruled the plaintiffs' motion for judgment on the pleadings. In dismissing an appeal taken from those rulings, this court observed that `the record did not disclose whether the defendant complied by filing the verification. Presumably the defendant may still comply.' Further recognition of the rule is found in Dubbs v. Haworth, 102 Kan. 603, 171 Pac. 624 [(1918)], where it was held that the failure to verify a claim filed in probate court is a defect which may be waived.
"Moreover, the view is generally held that when an amendment is made, it dates back to the time of the original petition. (Pulliam v. Pulliam, supra.) The rule is phrased in 71 C.J.S. Pleading § 358, p. 761, in this fashion:
"`The verification of a complaint, as well as the complaint itself, speaks as of the time when the action was commenced by filing the complaint. It is sufficient if it was then true.'
"The same principle finds expression in Dean et al. v. First Nat'l Bank et al. supra, at pages 349, 350, 341 P.2d at page 517:
"`The verification of a complaint speaks as of the time when the action was commenced by filing the complaint *152 or petition and is sufficient if it was then true....
"`... But the verification does not constitute any part of the pleadings and cannot render it defective. 1 Bancroft, Code Pleading, 716, § 500. It adds no allegation. It tenders no issue. It is, as we have said, a formal matter, the omission or imperfection of which does not rise above the status of a mere irregularity that may be waived or cured by amendment. Its defects do not vitiate jurisdiction....'
"Our conclusion is that verification of a petition under K.S.A. 59-2201 is not a prerequisite to its being filed, but is a matter of form which falls under the aegis of that part of the statute providing that `no defect in form shall impair substantial rights.'"
We also note the following statement in Simonsen v. Town of Derry, 145 N.H. 382, 384, 765 A.2d 1033, 1035 (2000):
"Ordinarily, however, the verification does not `constitute a part of the pleading itself but, rather, goes to the form of the pleading.' [Federated Mortgage and Inv. Co. v. Jones, 798 S.W.2d 719, 721 (Mo.1990)]; see also In re Interest of L.D., 224 Neb. 249, 398 N.W.2d 91, 98 (1986). See generally 61B Am.Jur.2d Pleading § 888 (1999). Accordingly, other jurisdictions liberally permit an improperly verified pleading to be amended, even beyond the jurisdictional time frame within which to file the pleading. See, e.g., Drury Displays v. Board of Adjustment, 760 S.W.2d 112, 114 (Mo.1988) (en banc); In re Estate of Shaffer, 203 Kan. 264, 454 P.2d 1, 4-6 (1969); People v. Miller, 282 N.Y. 5, 24 N.E.2d 722, 723-24 (1939)."
In light of the civil nature of Rule 32 and in the absence of a controlling rule of criminal procedure, we find the general rule applicable to civil pleadings persuasive with respect to our inquiry into the Supreme Court's intent in requiring verification of a Rule 32 petition.
In addition, although our research indicates that the majority of states have not directly addressed the issue in the specific context of a postconviction petition, we did discover several decisions from other states specifically holding that lack of verification is not considered sufficient to deny a court subject-matter jurisdiction over a postconviction petition. See Miles v. State, 120 Nev. 383, 91 P.3d 588 (2004) (holding that under Nevada's postconviction statutory scheme, lack of proper verification is not a jurisdictional defect), and Ex parte Golden, 991 S.W.2d 859 (Tex. Crim.App.1999) (holding that an unverified petition for a writ of habeas corpus was not jurisdictionally barred from review). In Brown v. State, 458 N.E.2d 245 (Ind.Ct. App.1983), the Indiana Court of Appeals stated:
"Brown did not verify the petition for post-conviction relief. It was signed by counsel on his behalf. So the State points to PCR 1, § 3 which provides that,
"`The petition shall be made under oath and the petitioner shall verify the correctness of the petition, the authenticity of all documents and exhibits attached to the petition, and the fact that he has included every ground for relief under Sec. 1 known to the petitioner.'
"(Emphasis supplied). For the first time on appeal the State urges that the rule requires personal verification by the petitioner; therefore, the argument follows that, because Brown's petition was signed and verified not by Brown, but by his attorney, the petition should be dismissed for want of jurisdiction.
"We are aware of language in Thompson v. State, (1979) 270 Ind. 677, 389 *153 N.E.2d 274, suggesting that verification is necessary before a trial court gains jurisdiction over a post-conviction relief petition. We are also cognizant of the decisions in Shelor v. State, (1979) 270 Ind. 454, 386 N.E.2d 690, and Owen v. State, (1975) 167 Ind.App. 258, 338 N.E.2d 715, trans. denied, which indicate a trial court should not reach the merits of an unverified post-conviction petition. But those cases have never squarely addressed the question of whether verification is necessary to confer subject-matter jurisdiction, which can never be waived or consented to, or jurisdiction of the particular case, which must be raised at the earliest possible opportunity. Some guidance is given in language from Shelor, supra, and Owen, supra. Both cases required trial courts faced with unverified petitions to return the petition for verification. Such procedure suggests particular case jurisdiction, rather than subject-matter jurisdiction, is involved; i.e., the trial court is not powerless to act, but should, upon discovering the defect, have it remedied prior to deciding the particular case.
"Furthermore, we must recognize the time-honored principle that a statutory requirement of verification of pleadings is not jurisdictional. General case law is that want of verification is waived if an objection is not presented at the earliest possible opportunity. Prebster v. Henderson, (1916) 186 Ind. 21, 113 N.E. 241; Faylor v. Fehler, (1914) 181 Ind. 441, 104 N.E. 22; Strebin v. Lavengood, (1904) 163 Ind. 478, 71 N.E. 494; In re Estate of Gerth, (1972) 152 Ind.App. 273, 283 N.E.2d 578; Workman v. Workman, (1943) 113 Ind.App. 245, 46 N.E.2d 718, trans. denied. See also Hendricks v. State, (1981) Ind., 426 N.E.2d 367 (defendant did not object until after testimony by victims that supported the unverified petition alleging delinquency; thus, technical error on the State's part did not prejudice the substantial rights of the defendant). We believe this general rule is applicable to the facts of this case. The State did not raise lack of verification in the trial court; therefore, we deem the issue waived."
458 N.E.2d at 248-49 (footnotes omitted).
Based on the considerations above, we conclude that proper verification of a Rule 32 petition, although required by Rule 32.6(a), was not intended to be a jurisdictional prerequisite to the filing of the petition. Instead, the verification requirement is more appropriately a matter of form, the omission or inadequacy of which amounts to an irregularity that is subject to cure by a proper and timely amendment, and may be waived by the State if not properly raised. This construction, we think, is consistent with this Court's relation-back doctrine  the timely filing of a Rule 32 petition that is not in the proper form tolls the limitations period of Rule 32.2(c) so that an "amended petition" relates back to the date of the filing of the original petition, provided the amended petition is filed within a reasonable time. It is also consistent with Rule 1.2, Ala. R.Crim. P., in that it gives effect to the verification requirement in Rule 32 by allowing the State, which has the primary interest in ensuring the good faith of the averments and in preserving its ability to pursue a perjury prosecution if warranted, to enforce that requirement by making a timely objection to the petition, but also vesting the circuit court with the authority to take notice of a defective verification and order on its own that a petition be amended to provide proper verification. At the same time, this construction avoids the unnecessary delay and expense of dismissing what we have noticed are an increasing number of appeals from rulings on Rule 32 petitions that are not properly verified, by giving *154 legal effect to the circuit court's ruling on a petition even though the petition is not in compliance with the verification requirement.
In our view, permitting a verification defect to be cured by amendment without requiring the dismissal of the petition for lack of jurisdiction serves to promote the primary policy objectives underlying the verification requirement  ensuring that the averments in the petition are based on merit and truth and protecting against the filing of frivolous petitions  without sacrificing judicial economy. Therefore, we hold that proper verification of a Rule 32 petition, although required by Rule 32.6(a), is not a jurisdictional prerequisite to the filing of the petition and, accordingly, that the lack of proper verification does not deprive the circuit court of subject-matter jurisdiction of a Rule 32 petition. Although we understand the importance of adhering to the doctrine of stare decisis, we cannot continue to blindly follow decisions that we are now convinced were wrong, at least in part, when decided. See, e.g., Ex parte State Farm Fire & Cas. Co., 764 So.2d 543 (Ala.2000) (discussing the doctrine of stare decisis). Therefore, to the extent that Kelley, Coleman, and Thornton are inconsistent with this holding, those cases are hereby overruled.
In this particular case, the State did not object in the circuit court to the lack of proper verification of Smith's petition; thus, we deem the issue of verification to be waived for purposes of this appeal.

II.
Having determined that the circuit court had jurisdiction to rule on Smith's petition and, thus, that this appeal is properly before this Court, we now turn to the claim in Smith's petition.
Smith contends that he is entitled to be resentenced because, he says, he was not provided with a copy of the presentence report before he was sentenced as required by Rule 26.3(c), Ala.R.Crim.P. Smith claims that the presentence report constitutes newly discovered evidence. However, Smith failed to plead sufficient facts as required by Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P., tending to indicate that the report falls within the stringent definition of newly discovered evidence in Rule 32.1(e), Ala.R.Crim.P. Thus, summary denial of his petition was proper.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., concurs; BASCHAB, J., concurs in result, with opinion, which COBB, J., joins; WISE, J., concurs in result.
BASCHAB, Judge, concurring in the result.
I agree with the main opinion's conclusion that the lack of verification of a Rule 32 petition does not deprive a circuit court of subject matter jurisdiction to entertain the petition and its decision to overrule Thornton, Coleman, and Kelley to the extent that they held otherwise. I also agree with the following statement in the main opinion:
"[F]urther research indicates that there is considerable authority calling into question the correctness of our conclusion that an unverified Rule 32 petition has no operative effect when filed, and, in hindsight, we think that that conclusion, although certainly plausible, is not necessarily dictated by the language of Rule 32.6(a)."
918 So.2d at 145. However, I do not agree with the main opinion's conclusion that the lack of a proper verification constitutes only a defect in the form of the *155 petition.[5] Rather, for the reasons set forth herein, I conclude that the lack of a proper verification is a matter that concerns personal jurisdiction and that is subject to waiver. Therefore, although for different reasons, I agree with the conclusion that the State waived any objection to the lack of verification of the appellant's petition because it did not object on this ground in the circuit court. Accordingly, I respectfully concur in the result.
Black's Law Dictionary 870 (8th ed.2004) defines "subject-matter jurisdiction" as follows:
"Jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things."
Black's further defines "personal jurisdiction" as follows:
"A court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property interests."
Id.
"Objections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pretrial motion as provided in Rule 15.3."
Rule 15.2(a), Ala. R.Crim. P. (emphasis added).
"Rule 15.2 requires that certain objections be made and defenses raised by motion before trial. Objections to the venire or to an individual grand juror or to the venue must be raised by such a motion before trial.
"The exceptions are lack of subject matter jurisdiction and failure to charge an offense. The rule is different from Rule 12(b)(2), Fed.R.Crim.P., in that it adds the words `subject matter' before the word `jurisdiction.' This merely expresses the accepted interpretation of the federal rule, since objections to personal jurisdiction can be waived by failure to timely object. See Hess v. United States, 254 F.2d 578 (8th Cir.1958)."
Committee Comments to Rule 15.2(a), Ala. R.Crim. P. (emphasis added).
Subject matter jurisdiction is conferred by statute and/or rule and may not be waived. See Hamilton v. State, 828 So.2d 957, 959-60 (Ala.Crim.App.2002) (noting that "`[t]he lack of subject matter jurisdiction is not waivable and may be raised at any time by the suggestion of a party or by a court ex mero motu.' Greco v. Thyssen Mining Constr., Inc., 500 So.2d 1143, 1146 (Ala.Civ.App.1986)"). However, personal jurisdiction involves a court's power to adjudicate a person's rights and may be waived.
It appears that this court and the Alabama Supreme Court have used the terms "jurisdiction" and "jurisdictional" as umbrella terms that encompass the concepts of subject matter jurisdiction and personal jurisdiction.[6] As a result, the distinction between subject matter jurisdiction and personal jurisdiction has been blurred, and both circuit and appellate courts are confused as to the definition and scope of both concepts.
In Ex parte Dison, 469 So.2d 662, 663 (Ala.1984), the Alabama Supreme Court
"granted certiorari in order to respond to the following legal question: Whether *156 an appeal from a conviction of a misdemeanor in district court upon an unsworn DUI ticket and complaint gives the circuit court jurisdiction in a trial de novo and allows the circuit court to verify the complaint, or whether a subsequent judgment of conviction in circuit court is void."
The court concluded
"that the circuit court did not have jurisdiction in petitioner's trial de novo because the district court judgment was void as being based upon an unverified complaint. Hence, petitioner's conviction in circuit court was itself void."
469 So.2d at 665. On application for a rehearing, Justice Maddox dissented, reasoning as follows:
"I do not believe the absence of a verification of the traffic ticket rendered it void. As Judge Harwood, who later served on this Court, stated in Pierce[ v. State, 38 Ala.App. 97, 77 So.2d 507 (1954), cert. denied, 262 Ala. 702, 77 So.2d 512 (1955)]:
"`The absence of a verification to a common law information does not render it void or deprive a court of jurisdiction....' (Emphasis added.)
"Temporary Rule 16.2(d), Ala. R.Crim. P., which provides that a question of subject matter jurisdiction can be raised at any time, does not apply. The majority quotes the substance of this rule in its opinion and states: `See Comment which explains that subject matter jurisdiction, such as a sworn complaint, cannot be waived; however, personal jurisdiction may be waived.' The Comment to Temp. Rule 16.2(d), Ala. R.Crim. P., does not make any reference to the words `such as a sworn complaint,' which appear in the majority opinion, so I interpret the majority's reference to be an interpretation of the words `subject matter jurisdiction.' A district court has jurisdiction to try traffic offenses such as the one involved here; therefore, I disagree with the majority's interpretation of the words `subject matter jurisdiction.'
"I am mindful of our state's constitutional provision that the accused is entitled `to demand the nature and cause of the accusation; and to have a copy thereof.' Sec. 6, Ala. Const., 1901. Here, the defendant had a statement of `the nature and cause of the accusation'; it just was not verified. The lack of a verification, in my opinion, was an amendable defect, and did not make the accusation void, nor deprive the court of subject matter jurisdiction."
Id. at 667.
Subsequently, in City of Dothan v. Holloway, 501 So.2d 1136, 1137-39 (Ala.1986), the Alabama Supreme Court overruled Dison, explaining as follows:
"In Dison, this Court reversed the defendant's conviction for driving under the influence because the ticket issued to the defendant had not been verified before a judicial officer. The opinion in Dison concluded that this lack of verification of the ticket prevented the district court, and subsequently the circuit court on appeal, from obtaining subject matter jurisdiction, and thus, that the defendant's conviction was void. 469 So.2d at 664. There are, however, numerous cases decided prior to Dison that reflect the position that the lack of verification of the ticket would only affect the trial court's ability to obtain jurisdiction over the person and not its ability to obtain jurisdiction of the subject matter. In that respect, the failure to have the ticket verified is a defect that could be waived by the defendant by proceeding to trial in the district or municipal court without objecting to the defect at that time.

*157 "In Woolf v. McGaugh, 175 Ala. 299, 57 So. 754 (1911), this Court set forth the two elements that are necessary for a trial court to obtain proper jurisdiction to try a case. The Court differentiated the two elements by making the following statements:
"`Jurisdiction in personal actions depends upon two elements: The subject-matter to be adjudged; the presence in court of the parties whose rights are to be affected by the judgment. In respect of subject-matter, the court acquires jurisdiction by the act of its creation; it is inherent in the constitution of the court. The other element it acquires by its own act, by its process properly issued and served, or by voluntary appearance of the defendant.'
"175 Ala. at 303, 57 So. at 755.
"See also, Goulden v. State, 292 Ala. 704, 705, 299 So.2d 325, 326 (197[4]) (citing Woolf, the Court held that the trial court had jurisdiction of the subject matter, i.e., the crime, even though the grand jury foreman had not endorsed the indictment as a `true bill'); Sherrod v. State, 197 Ala. 286, 288, 72 So. 540, 541 (1916) (citing Woolf, this Court held that where a trial court has jurisdiction of the subject matter, `the jurisdiction of the person could be acquired only by service of its process, or a voluntary appearance of the defendant'). The statement made by this Court in Woolf dictates the conclusion that a court obtains jurisdiction of the subject matter by law and not from any action of the court itself. Since that is so, the district court in Dison properly obtained jurisdiction of the subject matter, i.e., the traffic offense of DUI, pursuant to Code 1975, § 12-12-51 (`District court jurisdiction of misdemeanor prosecutions for traffic infractions'). Therefore, the fact that the ticket in the Dison case was not verified would not affect the district court's jurisdiction of the subject matter. Instead, the lack of verification would more directly affect the question of whether the court had obtained personal jurisdiction of the defendant.
"This interpretation of jurisdiction, as it relates to the issue presented in Dison, is consistent with the view expressed in a number of decisions issued by this Court and the Court of Appeals. Over a century ago, in City of Selma v. Stewart, 67 Ala. 338, 340 (1880), this Court held that a defendant had waived the right to challenge any defects in an affidavit unless he objected to them in the trial court. See also, Blankenshire v. State, 70 Ala. 10, 11 (1881). In the case of Wells v. State, 245 Ala. 510, 17 So.2d 878 (1944), the defendant's attorney argued that an `[a]ffidavit and warrant of arrest [which are] not on oath... [are] void....' The affidavit stated that the affiant appeared before a certain person, but the affidavit was sworn to and subscribed by another person. This Court affirmed the defendant's conviction and stated that `[o]bjections to the affidavit are not available when raised for the first time on appeal.' 245 Ala. at 511, 17 So.2d at 878.
"A similar line of cases has held that, where a defendant has proceeded to trial in an inferior court without demanding a written complaint of the accusation against him, then that defect in the proceedings is deemed to have been waived. In the case of Aderhold v. City of Anniston, 99 Ala. 521, 12 So. 472 (1893), the defendant was arrested without any affidavit being made or an arrest warrant being issued. In the recorder's court (the inferior trial court), the defendant pleaded not guilty, was tried, and was convicted. On appeal to the city court, the defendant argued for the first time *158 that because the prosecution was begun without an affidavit or warrant he could not be tried for the offense. This Court held that, `not having raised those objections in the Recorder's Court, but having there voluntarily appeared to answer the charge, and having pleaded and gone to trial, the defendant waived them....' 99 Ala. at 523, 12 So. at 472. Accord, City of Birmingham v. O'Hearn, 149 Ala. 307, 309-10, 42 So. 836, 836-37 (1906); Brooks v. City of Birmingham, 31 Ala.App. 579, 581-82, 20 So.2d 115, 116-17 (1944).
"This is also one of the rationales underlying the decisions of this Court in Ex parte Hood, 404 So.2d 717 (Ala.1981), and Ex parte Holden, 407 So.2d 182 (Ala.1981). One of the cases cited in, and relied on by, Hood was the case of Chaney v. City of Birmingham, 246 Ala. 147, 21 So.2d 263 (1944). In Chaney, this Court was requested to answer two questions certified to it by the Court of Appeals. One of the questions was on the subject of what was required to invoke the jurisdiction of the next higher court on an appeal from an inferior court. In responding to that question, the Court stated the following:
"`[T]hat an accused was arrested and tried in such court without a written complaint (affidavit) does not render the judgment there entered void for want of jurisdiction. [Citations omitted.] This for the reason that he may waive the right. [Citation omitted.]
"`If the defendant proceed to trial in such court without demanding such complaint he is held to have waived the right and, later on appeal, he cannot for the first time avail of it. [Citations omitted.]
"`In order to abate the proceedings in the appellate court because of the lack of an affidavit before the recorder the transcript must affirmatively show that objection to trial without one was seasonably interposed when accused was arraigned and tried in the recorder's court.'
"246 Ala. at 151, 21 So.2d at 267-68.
"See also, McKinstry v. City of Tuscaloosa, 172 Ala. 344, 347, 54 So. 629, 630 (1910) (this Court held that a defendant is deemed to have waived his right to a written complaint setting forth the accusation against him if he does not demand such a complaint before the trial). Accord, Williams v. City of Birmingham, 41 Ala.App. 208, 211, 133 So.2d 713, 716-17 (1961).
"There are several other opinions issued by the Court of Appeals worth mentioning that support the proposition that the lack of verification of the ticket does not affect a trial court's obtaining jurisdiction of the subject matter. The opinion of the Court of Appeals in the case of Bolling v. State, 21 Ala.App. 244, 245, 107 So. 40 (1925), contained the following statement with respect to the question of the trial court's jurisdiction:
"`[T]here being no challenge of the affidavit, but a specific agreement by defendant to go to trial thereon, and the circuit court having the original jurisdiction over the crime charged, the defendant is precluded from raising the question of jurisdiction for the first time in this court.'
"In Fealy v. City of Birmingham, 15 Ala.App. 367, 73 So. 296 (1916), the record on appeal did not contain the affidavit upon which the complaint filed by the solicitor was based. The Court of Appeals held:
"`The procedure [for trial] presupposes a valid affidavit in the recorder's court; at least it was the right of the defendant to demand a verified complaint in that forum, and his failure *159 in that behalf has been construed as a waiver, and that the objection came too late upon the trial in the circuit court.'
"15 Ala.App. at 372, 73 So. at 298.
"There are, of course, a number of decisions issued from this Court and the Court of Appeals that were relied on in this Court's opinion in Dison which have held that a void affidavit will prevent the trial court from obtaining jurisdiction to try the case. See, e.g., Slater v. State, 230 Ala. 320, 162 So. 130 (1935); Kyser v. State, 22 Ala.App. 431, 117 So. 157, cert. denied, 217 Ala. 561, 117 So. 159 (1928). Although the decisions rendered in those cases are not readily distinguishable, we believe that the reasoning applied in the cases cited in this opinion is the most appropriate. The cases we have cited stand for the proposition that a defendant can waive his right to have an affidavit free from irregularities and can even waive his right to have any written statement informing him of the accusation against him, if he does not object to those defects at trial. See, e.g., City of Selma v. Stewart, supra; Chaney v. City of Birmingham, supra. Since those defects may be waived by a defendant if he does not object at trial, they must be regarded as pertaining to a trial court's obtaining personal jurisdiction of the defendant. This conclusion is inescapable, since a defendant can not be deemed to have waived an objection that the trial court does not have jurisdiction of the subject matter. See, Berry v. State, 28 Ala.App. 446, 447, 186 So. 781, 782 (1939); Temp. Rule 16.2, A.R.Crim. P. See also, Mobile & Gulf R. Co. v. Crocker, 455 So.2d 829, 831 (Ala.1984).
"This Court does not easily reach a decision to overrule a case, especially one that was so recently decided. However, after a consideration of many of the prior cases involving the issue presented in Dison, we find it necessary to overrule the decision rendered in that case. This opinion should not be construed in any manner whatsoever to condone or sanction the prosecution of an individual pursuant to a UTTC that has not been verified. Under Rule 19, Rules of Judicial Administration, the proper procedure is to have the UTTC verified before the proper official. In overruling the Dison opinion, we are simply holding that if the UTTC is not verified and the defendant does not object to this defect before trial, then the objection to the court's personal jurisdiction of the defendant has been waived."
(Last emphasis added.)
The Alabama Supreme Court further muddied the water with its seemingly inconsistent holdings in Ex parte St. John, 805 So.2d 684 (Ala.2001), and Ex parte McWilliams, 812 So.2d 318 (Ala.2001), regarding this court's holding in Goldsmith v. State, 709 So.2d 1352 (Ala.Crim.App. 1997), concerning the payment of filing fees in connection with Rule 32 petitions.
In Goldsmith v. State, 709 So.2d 1352 (Ala.Crim.App.1997), Goldsmith filed a petition for a writ of certiorari and a request to proceed in forma pauperis in the Montgomery Circuit Court. The circuit court apparently did not rule on his request to proceed in forma pauperis. Because Goldsmith had not paid the filing fee, the circuit clerk's office did not docket the case or assign a case number to it. However, the circuit court entered an order dismissing the petition, and Goldsmith appealed the circuit court's judgment to this court. This court dismissed Goldsmith's appeal, holding that,
"in the absence of a docket fee in the amount prescribed in § 12-19-71(3), Ala.Code 1975, or an approved in forma *160 pauperis declaration, the petition for certiorari review was never properly before the trial court. The order dismissing the petition was a nullity.
"Contrary to prior holdings of this court, ... mandamus, and not appeal, is the proper method by which to compel the circuit court to proceed on an in forma pauperis petition.
"Mandamus is the proper remedy because, absent payment of the filing fee or approval of the in forma pauperis declaration, the circuit court does not acquire subject matter jurisdiction."
Goldsmith, 709 So.2d at 1352-53 (footnote omitted)(emphasis added).
Subsequently, in Ex parte St. John, 805 So.2d 684, 685-86 (Ala.2001), the Alabama Supreme Court stated:
"We note in passing that the Goldsmith rule will justify dismissing an appeal of a denial or a dismissal of a Rule 32 petition for lack of jurisdiction in the [circuit] court to enter the ruling only (a) if the record on appeal affirmatively shows that the petitioner did not either pay the [circuit] court filing fee or obtain leave to proceed in forma pauperis before the [circuit] court as required by Rule 32.6(a), Ala. R.Crim. P., or (b) if, before the [circuit] court, the State has challenged a failure by the petitioner to pay the [circuit] court filing fee or to obtain the leave, or the [circuit] court has dismissed the petition on such ground, and either the State or the petitioner has raised such failure as an issue on appeal. Unless such failure is such an issue on appeal, no statute or rule requires the record on appeal to contain proof that the petitioner has paid the [circuit] court filing fee or that the [circuit] judge has granted leave to proceed in forma pauperis before the [circuit] court."
By requiring that the failure to pay a filing fee or obtain leave to proceed in forma pauperis be raised as an issue on appeal, the Alabama Supreme Court appeared to depart from this court's holding in Goldsmith that such failure implicated the subject matter jurisdiction of the circuit court and rendered that court's actions void. Rather, the supreme court implied that such failure implicated only the personal jurisdiction of the circuit court and did not necessarily render that court's actions void.
However, subsequently, in Ex parte McWilliams, 812 So.2d 318 (Ala.2001), McWilliams filed a petition for a writ of habeas corpus and an "Affidavit of Substantial Hardship" in the Escambia Circuit Court. The circuit court entered an order denying the petition, and McWilliams appealed the circuit court's judgment to this court. We dismissed McWilliams' appeal on the ground that the circuit court's order denying the petition was void because the circuit court had not ruled on McWilliams' request to proceed in forma pauperis or required McWilliams to pay the filing fee.[7] Subsequently, we entered an order taxing the docket fee for the appeal to McWilliams. McWilliams filed a petition for a writ of mandamus with this court, requesting that we set aside our order taxing the docket fee to him. We denied the petition. McWilliams then filed in the Alabama Supreme Court a petition for a writ of mandamus directing this court to set aside its order taxing him with the docket fee. In its decision, the supreme court addressed the propriety of our previous decision dismissing McWilliams' appeal and stated:
"Section 12-19-70, Ala.Code 1975, requires that a circuit court collect the *161 docket fee for a postconviction petition at the time the petition is filed, unless the circuit court approves a verified statement of substantial hardship, in which event the docket fee may be initially waived and then taxed as costs at the conclusion of the case. See § 12-19-70(b), Ala.Code 1975; Ex parte Carter, 807 So.2d 534, 536 (Ala.2001).
"...
"In its unpublished memorandum dismissing McWilliams's appeal from the order of the Escambia Circuit Court purporting to deny his petition challenging his capital-murder conviction, the Court of Criminal Appeals correctly stated that the circuit court could not obtain subject-matter jurisdiction to consider a postconviction petition without first collecting a docket fee or granting a proper request to be allowed to proceed in forma pauperis. `[A]bsent the payment of a filing fee [required by § 12-19-70, Ala.Code 1975,] or the granting of a request to proceed in forma pauperis the trial court fails to obtain subject matter jurisdiction to consider a postconviction petition.' Carpenter v. State, 782 So.2d 848, 849 (Ala.Crim.App.2000) (citing Goldsmith v. State, 709 So.2d 1352, 1352-53 (Ala. Crim.App.1997)). See also, e.g., Ex parte Beavers, 779 So.2d 1223, 1224 (Ala.2000). Thus, the Court of Criminal Appeals correctly determined that the order of the Escambia Circuit Court purporting to deny McWilliams's postconviction petition was void. E.g., Carpenter, supra, 782 So.2d at 850; Goldsmith, 709 So.2d at 1353."
McWilliams, 812 So.2d at 320-22 (footnote omitted) (emphasis added).[8] Thus, the Alabama Supreme Court returned to the Goldsmith holding that the failure to pay a filing fee or obtain leave to proceed in forma pauperis implicated the subject matter jurisdiction of the circuit court and rendered that court's actions void.
In deciding the case before us, the main opinion concludes that the lack of a proper verification of a Rule 32 petition constitutes only a defect in the form of the petition and overrules prior decisions that had considered the lack of verification to deprive a circuit court of subject matter jurisdiction to entertain the petition. Interestingly, the main opinion does not address the issue in terms of personal jurisdiction, as did the Alabama Supreme Court in City of Dothan v. Holloway. In my view, the Alabama Supreme Court's differentiation between subject matter jurisdiction and personal jurisdiction in City of Dothan v. Holloway is instructive.
By virtue of §§ 12-11-30(2) and 12-12-51, Ala.Code 1975, and Rule 32.1, Ala. R.Crim. P., the court of original conviction has subject matter jurisdiction to entertain a Rule 32 petition. Therefore, I agree with the main opinion's conclusion that the lack of verification of a Rule 32 petition does not deprive a circuit court of subject matter jurisdiction to entertain the petition and its decision to overrule Thornton, Coleman, and Kelley to the extent that they hold otherwise.
A Rule 32 petition is somewhat of an anomaly in criminal law because most criminal proceedings are initiated by the State. However, a convicted defendant, *162 rather than the State, initiates a Rule 32 proceeding by filing a Rule 32 petition. In so doing, he submits himself to the jurisdiction of the court for an adjudication of his rights. Therefore, although a petitioner should comply with the verification requirement set forth in Rule 32.6(a), Ala. R.Crim. P., if the State does not object on this ground, it would be illogical for a reviewing court to conclude that the petitioner did not submit himself to the jurisdiction of the court simply because he did not verify his petition. In my view, based on my reading of City of Dothan v. Holloway, the lack of a proper verification of a Rule 32 petition is a matter that concerns personal jurisdiction over the petitioner and that is subject to waiver. Therefore, because the State did not object to the lack of verification in this case, the Jefferson Circuit Court, which was the court of original conviction, had jurisdiction to entertain the petition because any personal jurisdiction defect was waived.
For these reasons, I respectfully concur in the result.
NOTES
[1] By allowing each petitioner the opportunity to file another petition without suffering any adverse statute-of-limitations consequences caused by the delay in filing, the petitioners in Thornton, Coleman, and Kelley were not prejudiced as a result of what we now believe was our erroneous interpretation of the verification requirement in Rule 32.6(a).
[2] Although the verification issue has not been argued in this case, we note that, in another case currently before this Court, Marquette v. State (No. CR-04-0062), the State has taken the position that verification of a Rule 32 petition is jurisdictional and that we should adhere to our holding in Kelley, Coleman, and Thornton.
[3] Rule 32.4 specifically provides that "[p]roceedings under this rule shall be governed by the Rules of Criminal Procedure."
[4] We note here that petitions for the writ of habeas corpus, see discussion supra, are considered civil actions for procedural purposes. See Carpenter v. State, 782 So.2d 848 (Ala. Crim.App.2000), and Rule 81, Ala.R.Civ.P.
[5] I also do not agree with the main opinion's attempt to support its conclusion by citing the law regarding petitions for writs of habeas corpus and writs of error coram nobis and the Alabama Rules of Civil Procedure.
[6] It also appears that the courts have sometimes used these terms when the more appropriate term would be "authority."
[7] We also noted that McWilliams should have filed his petition in the Montgomery Circuit Court, where he was convicted, because his claims were cognizable in a Rule 32 petition.
[8] The supreme court also held that, because the petition should have been filed in the Montgomery Circuit Court, we should not have dismissed McWilliams' appeal. Rather, it held that we should have reversed the Escambia Circuit Court's judgment and remanded the case with instructions that that court transfer the petition to the Montgomery Circuit Court. Therefore, the supreme court held that McWilliams would not have been subject to the docket fee.